OPINION OF THE COURT
Jacqueline M. Koshian, J.
Petitioners, who are comprised, inter alla, of certain construction industry trade associations and a prospective bidder, have commenced this proceeding against the County of Niagara to assail the propriety of a so-called project stabilization agreement (the agreement). The agreement,- which relates to a public works project concerning the construction of a new county jail facility, is commonly referred to as a prehire collective bargaining agreement. It was negotiated between the County and the Niagara County Building Trades Council and its affiliated local trade unions pursuant to an April 19, 1994 resolution of the County Legislature. In accordance with its terms, the contractor awarded a contract pursuant to one of the jail project bid packages must comply with the agreement. The practical effect of the agreement is to require the successful bidder on the job to employ union labor on the job.
Petitioners, who have among their ranks a number of nonunion contractors, contend, inter alla, that the agreement violates the competitive bidding statutes. They contend further that the agreement violates article I, § 17 of the NY Constitution concerning representation of employees and that certain residency provisions in the agreement contravene statutory law and the Federal and State Constitutions.
The County contends that petitioners have no standing to maintain this proceeding. On the merits, it asserts that the agreement and its incorporation into the bid specifications for this public works project complies with the ruling propounded by the United States Supreme Court in the Boston Harbor case (Building & Constr. Trades Council v Associated Bldrs. & Contrs., 507 US —, 122 L Ed 2d 565).
Petitioners’ first, second and third causes of action are in the nature of mandamus in that they seek to compel compli *539 anee with the competitive bidding statute concerning the County jail project. It is beyond dispute that General Municipal Law § 103 imposes a mandatory duty on public officials. Nor can one question the propriety of using a CPLR article 78 proceeding to coerce mandated action (see, CPLR 7803 [1]; Elia Bldg. Co. v New York State Urban Dev. Corp., 54 AD2d 337, 340). As noted, petitioners consist of construction industry trade associations and their member nonunion contractors, at least one of whom is alleged to be a prospective bidder on the job. Because petitioners consist of construction industry trade associations and their member nonunion contractors who allege that the County’s statutory violation effectively prevents them from entering a bid on the project, petitioners have the requisite standing to maintain this proceeding (see, Elia Bldg. Co. v New York State Urban Dev. Corp., supra, at 342).
Turning to the merits, there is no dispute in the instant case that the County jail project is subject to the competitive bidding laws. Section 100-a of the General Municipal Law states that the competitive bidding statute "be construed * * * to assure the prudent and economical use of public moneys for the benefit of all the inhabitants of the state and to facilitate the acquisition of facilities and commodities of maximum quality at the lowest possible cost”. The requirement in section 103 (1) that contracts for public works involving expenditures of more than $20,000 be awarded to the lowest responsible bidder "evinces a strong public policy of encouraging honest competition to obtain the best work at the lowest possible price, and to guard against favoritism, improvidence, extravagance, fraud, and corruption * * * The intended beneficiaries of these statutes are the taxpayers, and therefore this Court must construe section 103 (1) with sole reference to the public interest” (Matter of Construction Contrs. Assn. of Hudson Val. v Board of Trustees, 192 AD2d 265, 267 [citations omitted]). So essential is the notion of free and open competition to the system of letting contracts for public improvements that any ordinance, local law, contract requirement or bid specification "which establishes a precondition to the award of a contract to the lowest responsible bidder, is inconsistent with General Municipal Law § 103 and, therefore, invalid, unless its establishment as a precondition is expressly authorized by 'an act of the legislature or by a local law adopted prior to September first, nineteen hundred fifty-three’ ” (Associated Bldrs. & Contrs. v City of Rochester, 67 NY2d 854, 855). *540 Thus, the Court in the City of Rochester case invalidated a local law which provided that in awarding certain municipal contracts preference be given to any contractor who participated in a State-approved apprenticeship program. Although cognizant of the ordinance’s obvious benevolent purpose, the Court in the City of Rochester case was compelled to find that the enactment conflicted with the more predominate purpose espoused in the competitive bidding law (Associated Bldrs. & Contrs. v City of Rochester, supra, at 856; see also, Associated Bldrs. & Contrs. v City of Rochester, 112 AD2d 697, 700 [dissenting opn Doerr, J.]). Similarly, the Court in the Hudson Val. case (supra) invalidated work-experience-related bid specifications as an improper precondition in violation of section 103 that was designed to "reduce competition for reasons which do not inure to the benefit of the public, but rather serve other, unrelated purposes” (see, Matter of Construction Contrs. Assn. of Hudson Val. v Board of Trustees, supra, at 268). Because mandatory compliance with the subject project labor agreement erects a barrier that might eliminate or dissuade from the bidding process a prospective nonunion contractor, the specifications for the project as bid fail to comply with section 103. While the County might well have had excellent reasons for adopting such an agreement, the court nonetheless finds that its inclusion into the bid specifications for this project constitutes an unlawful intrusion into this area of mandated competitive bidding.
The Boston Harbor case (supra) relied upon by the County does not compel a contrary result. The only issues decided by the Supreme Court there was whether the Massachusetts Water Resources Authority, a public authority, may negotiate a prehire project labor agreement for a project within which it has a proprietary interest without running afoul of the National Labor Relations Act. Because the public authority was the owner of the project, the court in Boston Harbor held that Federal law did not preempt the area and that the authority was not regulating labor by negotiating or including the prehire agreement into its bid specifications (Building & Constr. Trades Council v Associated Bldrs. & Contrs., supra, at 579). Thus, to assert that the agreement here complies with the ruling in Boston Harbor does not address the inquiry of whether the inclusion of such an agreement as a bid specification on a public works project is violative of the competitive bidding laws of this State. For the reasons previously stated this court holds that it constitutes a form of prequalification *541 which violates General Municipal Law § 103. Because the agreement fails to withstand scrutiny when considered in light of the competitive bidding statute, the court does not reach the narrower claims which assail the constitutional propriety of some of its provisions.
Accordingly, it is hereby
Adjudged that the County’s inclusion of the prehire project labor agreement into the bid specification of this public improvement project violates the competitive bidding laws, and it is
Ordered that the petition is granted, so as to compel the County to redraft the specifications to comply with General Municipal Law § 103 and thereafter to commence the bidding process anew.